UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>EASTBOX LLC d/b/a JACK IN THE BOX; ROCK STRATEGIC LLC<br>　　　　　　　Defendants. | CIVIL ACTION NO. 4:23-cv-814<br><br>COMPLAINT<br><br>**JURY TRIAL DEMANDED** |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 as amended ("Title VII") and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex and to provide appropriate relief to Gloria Bills, Erica Tate, Courtney Woods, Kristie Wooten, and a class of similarly situated aggrieved female employees including but not limited to Brianna Allen, Adrianna Bond, Kyosha Ellis, Amaiya Garvin, Zakoyia Jones, and Chyna Presley who were adversely affected by such practices. As alleged with greater particularity in paragraphs 17-43 below, Defendants Rock Strategic LLC and Eastbox LLC d/b/a Jack in the Box discriminated against the female employees by subjecting them to a sexually hostile work environment, intolerable conditions causing their constructive discharge, and *quid pro quo* sexual harassment in violation of Title VII.

## JURISDICTION AND VENUE

1.　　Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title

VII, 42 U.S.C.§ 2000e-5(f)(1) and (3); and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Texas.

## PARTIES

3. Plaintiff Equal Employment Opportunity Commission ("EEOC") is an agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action pursuant to Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. Defendant Eastbox LLC d/b/a Jack in the Box, a Texas corporation headquartered in Garland, Texas, owns and operates multiple restaurant franchises including the Jack in the Box central to this lawsuit located at 3110 NE Loop 286, Paris, Texas 75460.

5. Defendant Rock Strategic LLC, a Texas corporation headquartered in Garland, Texas, is a holding company that owns several subsidiaries, including Eastbox LLC, that operate restaurant franchises.

6. At all relevant times, Defendants operate as an integrated business enterprise and collectively had at least fifteen (15) employees on a continual basis at times relevant to this civil action. Evidence of their operation as an integrated enterprise includes but is not limited to the following:

   a. Defendant Rock Strategic LLC operates several subsidiary companies, including Defendant Eastbox LLC d/b/a Jack in the Box. Together, these companies operate a Jack in the Box franchise located at 3110 NE Loop 286, Paris, Texas 75460.

    b. Defendants' operations are interrelated. Defendants have records stored in the same location, list a shared registered agent, maintain centralized employee and application portals, maintain a centralized ethics hotline for complaints, use shared human resources employees and resources.

    c. Defendants have centralized control of labor relations. Certain employees, like Defendant Rock Strategic LLC's Director of Operations Lori Chavez-Wysocki engaged in responsibilities for both Defendants including human resources functions.

    d. Defendants share common management. Defendants utilize a management structure where mid-level management for its subsidiaries, like Defendant Eastbox LLC, report to higher-level management employed by Rock Strategic LLC.

    e. Defendants have common ownership. Christopher Aslam is listed as the exclusive owner of both entities.

7. At all relevant times, Defendants have continuously been doing business in the State of Texas.

8. At all relevant times, Defendants have continuously been employers engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

9. On October 20, 2021, more than thirty days prior to the institution of this lawsuit, Gloria Bills and Erica Tate each filed a charge of discrimination with EEOC, alleging Defendants violated Title VII.

10. On October 21, 2021, more than thirty days prior to the institution of this lawsuit, Kristie Wooten filed a charge of discrimination with EEOC, alleging Defendants violated Title VII.

11. On October 26, 2021, more than thirty days prior to the institution of this lawsuit, Courtney Woods filed a charge of discrimination with EEOC, alleging Defendants violated Title VII.

12. On May 16, 2023, EEOC issued to Defendants four Letters of Determination relating to Bills, Tate, Wooten, and Woods' respective allegations, finding reasonable cause to believe Title VII was violated. Additionally, EEOC found reasonable cause that a similarly situated class of aggrieved female employees were subjected to Title VII violations. In these same letters, EEOC invited Defendants to join in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

13. EEOC engaged in communications with Defendants to provide them the opportunity to remedy the discriminatory practices described in the Letters of Determination.

14. EEOC was unable to secure conciliation agreements acceptable to EEOC from Defendants.

15. On May 31, 2023, EEOC issued to Defendants four Notices of Failure of Conciliation, advising Defendants that EEOC was unable to secure acceptable conciliation agreements for the charging parties and aggrieved individuals.

16. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

17. Since at least January 2021 until roughly October 2022, Defendants have engaged in unlawful employment practices, in violation of Section 704(a) of Title VII, 42 U.S.C.§ 2000e-

3(a) when Defendants subjected Bills, Tate, Woods, Wooten, and a class of similarly situated aggrieved female employees to a sexually hostile working environment.

18. Defendants also engaged in unlawful employment practices in violation of Title VII when Defendants subjected Bills, Woods, Wooten, and a class of other aggrieved individuals to intolerable conditions resulting in their constructive discharge.

19. Defendants further engaged in unlawful employment practices in violation of Title VII when Defendants subjected Tate to *quid pro quo* sexual harassment, resulting in her termination.

20. In or around January 2021, Defendants hired Roy Porter as General Manager of the Jack in the Box franchise located in Paris, Texas.

21. As General Manager, Porter was the highest-ranking manager onsite at the restaurant. He was responsible for supervising the day-to-day operations of staff at the Paris, Texas location, had the authority to hire and fire employees, and set employee schedules.

22. Porter supervised all employees onsite, including Cooks, Team Members, and Assistant Managers, working at the Jack in the Box location.

23. Regional Manager Malakai Strickland supervised Porter. As Regional Manager, Strickland was responsible for hiring and assisting the General Managers at the various stores within his region. Strickland also had some responsibility for handling complaints of sexual harassment, discrimination, or retaliation in the workplace.

24. When hired, Porter began sexually harassing female employees including Bills, Tate, Woods, Wooten, and other similarly situated aggrieved individuals.

25. Porter referred to himself in a sexual manner, calling himself "big, sexy gorilla," "sexual chocolate," and "big daddy."

26. Porter's harassing conduct included inappropriate comments towards female employees, mentioning his desire to engage in sex acts with them and making remarks about their genitalia and private parts.

27. Porter would lick and bite his lips while looking seductively at female employees.

28. Porter made sexualized comments in relation to female employees' pregnancy such as "I should have been your child's daddy" and "let me get some of that pregnant vagina." After one female employee suffered a miscarriage in or around March 2021, Porter asked her if she was ready for him to "put another one in her."

29. Porter asked female employees to get drunk with him, go on dates, and have sex with him.

30. Porter requested to engage in sex acts on the premises in exchange for money. For example, within the first few hours of a female employee's shift in April 2021, Porter asked her if he could take her into the parking lot and pay to have sexual intercourse with her. On another occasion in June 2021, Porter asked a female employee if he could pay her to perform oral sex on her.

31. Porter's harassing conduct was physical at times including brushing his body, groin, or hand against female employees' bodies, breasts, and buttocks in tight spaces.

32. On one occasion, during a late-night shift, Porter masturbated in front of a female employee as she entered a restroom.

33. On another occasion in or around June 2021, Porter grabbed a female employee's genitals over her pants while they were secluded in the walk-in cooler.

34. Porter engaged in intimidating behavior when female employees rejected his advances such as telling other employees not to talk or look at them, threatening to fire them,

telling them Strickland will never punish him, or messaging them late at night on social media. Porter would also approach female employees' homes, where he would sometimes create a disturbance.

35. On or around March 11, 2021, Porter terminated Tate by removing her from the schedule because she rejected his sexual advances.

36. Numerous employees reported Porter's harassing conduct during his tenure with Defendants including the claimants. Employees reported to on-site management. These managers confronted Porter or passed these complaints onto Regional Manager Strickland.

37. Parents of teenage female employees also confronted Porter directly or complained to Regional Manager Strickland.

38. Some employees reported Porter to Defendant Rock Strategic LLC's Director of Operations. Other employees reported Porter to Defendant Rock Strategic LLC's Executive Assistant to the CEO/President.

39. Though Defendants received countless complaints placing them on notice of Porter's harassing conduct, they failed or refused to exercise reasonable care to prevent and correct any harassing behavior. Despite the extensive and repeated harassment, Porter continued to be allowed to work for Defendants as a General Manager and harassing employees until he was later terminated for purported performance issues in late October 2022.

40. Additionally, Defendants failed to disseminate its policies and reporting mechanisms to all employees. Some employees never received a copy of the handbook or other anti-harassment policies. Other employees did not have access to the contact information of higher-level management though they requested it.

41. Furthermore, Defendants failed or refused to properly train staff on how to prevent and correct discriminatory conduct or harassment. Contrary to Defendants representations that a proper investigation of complaints of sex harassment was conducted, any such alleged actions were wholly insufficient, untimely, unreliable, and ultimately ineffective. The Regional Manager kept no notes, nor did he provide any type of written investigative report.

42. Following a purported investigation, Porter bragged at work, shouting that he had been given yet another chance. Porter then told female employees not to wear leggings or tight pants if they wanted to be safe from his temptation.

43. The combination of Porter's harassment, braggadocious return to work following a purported investigation, as well as Defendants' refusal to engage in remedial action culminated in intolerable working conditions forcing Bills, Woods, Wooten, and a class of similarly situated female employees to conclude that they had no reasonable alternative but to end their employment with Defendants.

44. The unlawful employment practices complained of in paragraph 17-42 above were intentional.

45. The unlawful employment practices complained of in paragraph 17-42 above were done with malice or with reckless indifference to Bills, Tate, Woods, and Wooten's federally protected rights.

**PRAYER FOR RELIEF**

Wherefore, EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, successors, and all persons in active concert or participation with them from

subjecting individuals to a sexually hostile work environment and failing or refusing to take corrective or preventative measures as required under Title VII.

  B. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for women that eradicate the effects of its past and present unlawful employment practices.

  C. Order Defendants to make whole Bills, Tate, Woods, Wooten, and a class of similarly situated aggrieved individuals who were adversely affected by Defendants' discriminatory conduct, by providing appropriate back pay with prejudgment interest in amounts to be determined at trial and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement or front pay in lieu thereof.

  D. Order Defendants to make whole Bills, Tate, Woods, Wooten, and a class of similarly situated aggrieved individuals who were adversely affected by Defendants' discriminatory conduct, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 17-43 above, including but not limited to relocation and job search expenses and other consequential costs and expenditures in amounts be determined at trial.

  E. Order Defendants to make whole Bills, Tate, Woods, Wooten, and a class of similarly situated aggrieved individuals by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described above in paragraphs 17-43, including but not limited to emotional pain, suffering, inconvenience, and loss of enjoyment of life in amounts to be determined at trial.

F.    Order Defendants to pay Bills, Tate, Woods, Wooten, and a class of similarly situated aggrieved individuals punitive damages for their malicious or reckless conduct described above in amounts to be determined at trial.

G.    Grant such further relief as the Court deems necessary and proper in the public interest.

H.    Award EEOC its costs in this action.

## JURY TRIAL DEMAND

EEOC requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

GWENDOLYN YOUNG REAMS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

/s/ Robert A. Canino
ROBERT A CANINO
Regional Attorney
Oklahoma State Bar No. 011782

/s/ Suzanne M. Anderson
SUZANNE M. ANDERSON
Assistant Regional Attorney
Texas State Bar No. 14009470

/s/ Brooke E. López
BROOKE E. LÓPEZ
Trial Attorney
Texas State Bar No. 24125141

SHANNON BLACK
Trial Attorney
Texas State Bar No. 24126061

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

Dallas District Office
207 Houston, 3rd Floor
Dallas, Texas 75202
(TEL) (972) 918-3597
(FAX) (214) 253-2749