UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION § § § v. § EASTBOX LLC d/b/a JACK IN THE BOX, ET AL. § § § § § | CIVIL NO. 4:23-CV-814-SDJ |

### MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff EEOC's Opposed Motion to Quash and for Protective Order. (Dkt. #24). In this motion, EEOC seeks to quash subpoenas that Defendants Eastbox LLC and Rock Strategic LLC (collectively, "Eastbox") served on claimant Erica Tate's medical providers. Having considered the motion and the relevant filings, (Dkt. #24, #25, #26), the Court concludes that the motion should be **DENIED**.

### I. BACKGROUND

Eastbox operates a Jack in the Box restaurant in Paris, Texas. After quitting or being fired, several female employees who worked there filed charges of discrimination with the EEOC. As a result, EEOC sued Eastbox under three main theories of liability pursuant to Title VII of the Civil Rights Act of 1964. First, Eastbox allegedly subjected ten female employees to a hostile work environment based on their sex. Second, EEOC claims that Eastbox created intolerable conditions that lead to the constructive discharge of three of these women. Third, Eastbox allegedly subjected one previous employee—Erica Tate—to quid pro quo harassment resulting in her termination. Eastbox denies these allegations, and the case is now in discovery.

1

The parties' discovery dispute relates to the scope of discoverable information from Erica Tate, who worked for Eastbox for one month. During that period, Tate claims that Roy Porter—the General Manager—repeatedly sexually harassed her. She also claims that Porter terminated her because she rejected his sexual advances. Tate's charge of discrimination also alleged that "the stress inflicted upon [her] by Mr. Porter and Eastbox caused her to suffer a miscarriage."[1] (Dkt. #25-1 at 2). For Tate, EEOC seeks, among other relief, (1) back pay for a period in which she was unemployed "because of her 'difficulty or inability to work with men following her time working for Defendants,'" (Dkt. #26 at 2); and (2) compensation for non-economic losses including "emotional pain, suffering, inconvenience, and loss of enjoyment of life in amounts to be determined at trial," (Dkt. #1 at 9).

Because of EEOC's claims for emotional pain and suffering, Eastbox served interrogatories requesting that EEOC identify each claimant's relevant medical providers since 2020. For Tate, EEOC initially identified six potentially relevant medical providers. Eastbox subsequently subpoenaed them, requesting Tate's medical records from February 2016 to present. EEOC gathered the requested medical records from each provider but now asserts that the medical records are all irrelevant except for the records from one provider—Arlene Roberts. Eastbox disagrees, claiming that these records are relevant to several of its defenses: (1) Tate's credibility as a witness, to the extent the records show that Tate lied on her charge

---

[1] The Court acknowledges that EEOC withdrew this contention after further investigation during discovery. But Tate made this claim to EEOC, which then sued Eastbox. Because EEOC did not retract this claim until after the suit began, it is reasonable to infer that EEOC relied on this claim, at least in part, in its decision to sue.

2

of discrimination about the cause of her miscarriage; (2) alternative causes for Tate's period of unemployment; and (3) alternative causes of emotional pain and suffering that are unrelated to Tate's claims. EEOC counters that even if these documents were relevant, they are protected by either psychotherapist-patient privilege or Tate's privacy interests.

## II. LEGAL STANDARD

District courts have broad discretion over the scope of discovery. *See, e.g.*, *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 645 (5th Cir. 2005). Under Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b). Relevance is construed broadly: The requested information need only relate to "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991); *see also Leonard v. Martin*, 38 F.4th 481, 489 (5th Cir. 2022) (similar). In addition to being relevant, such information must also be proportional to the needs of the case. *Zenith Ins. v. Tex. Inst. for Surgery, L.L.P*, 328 F.R.D. 153, 161 (N.D. Tex. 2018) (quotations omitted).

Although the scope of allowable discovery is broad, it is not unlimited. Courts may issue protective orders, quash subpoenas, or otherwise limit the scope of discovery "for good cause" to prevent "annoyance, embarrassment, oppression, or undue burden or expense[.]" FED. R. CIV. P. 26(c)(1). The party resisting discovery bears the burden of showing good cause, "which contemplates a particular and

specific demonstration of fact as distinguished from stereotyped and conclusory statements[.]" *Cazorla v. Koch Foods of Miss., L.L.C.*, 838 F.3d 540, 549 (5th Cir. 2016).

That said, when "a party's physical or mental condition is at issue, that party shall provide to the opposing counsel either the party's medical records or a signed authorization so that records of health care providers which are relevant to injuries and damages claimed may be obtained." Local Rule CV-34; *see also Barnett v. Stafford Transp. of La.*, No. 1:20-CV-280, 2020 WL 10314640, at *3 (E.D. Tex. Sept. 10, 2020) ("When a plaintiff places his medical condition at issue, a defendant may discover medical information related to that condition.") (quotations omitted). Seeking damages for emotional distress is sufficient to put a party's mental condition at issue. *See, e.g., Barnett*, 2020 WL 10314640, at *3 (allowing discovery of ten years of medical records because plaintiff sought damages for "mental anguish, physical pain and suffering, disability, loss of enjoyment of life, and physical impairment"); *Stogner v. Sturdivant*, No. 10-125, 2011 WL 4435254, at *5 (M.D. La. Sept. 22, 2011) (similar). And this makes sense: If a plaintiff alleges harm from an emotional injury, the defendant should be able to evaluate its potential defenses, such as determining "whether the plaintiff suffered any pre-existing physical or emotional distress that may be the (or an) actual cause of his/her emotional distress." *Stogner*, 2011 WL 4435254, at *5.

4

## III. DISCUSSION

### A. Standing

Under Rule 45, certain parties may "have limited standing to quash subpoenas served on non-parties[.]" *EEOC v. Charles W. Smith & Sons Funeral Home, Inc.* No. 4:21-CV-731, 2022 WL 3566927, at *2 (E.D. Tex. Aug. 18, 2022) (quotations omitted). To have such standing, the Fifth Circuit requires the contesting party to have either "possession of the materials subpoenaed" or a "personal right or privilege with respect to the materials subpoenaed." *Id.* (quoting *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979)). Because the EEOC sues to enforce the rights of others, some courts have found that it has standing to assert their privacy and privilege rights. *See, e.g.*, *EEOC v. Methodist Hosps. of Dallas*, No. 3:15-cv-3104, 2016 WL 10703743, at *2 (N.D. Tex. June 15, 2016) (collecting cases); *but see Charles W. Smith*, 2022 WL 3566927, at *2 (finding that EEOC did not have standing to oppose subpoenas for violating the claimant's privacy rights). Either way, any party has standing under Rule 26(c) to move for a protective order that limits the scope of discovery. *Charles W. Smith*, 2022 WL 3566927, at *2 (citing *Bounds v. Cap. Area Fam. Violence Intervention Ctr., Inc.*, 314 F.R.D. 214, 218 (E.D. Tex. 2016)).

EEOC has standing because it is in "possession of the materials subpoenaed." (Dkt. #24 at 6). None of Eastbox's cited cases involve a movant who possessed the materials subpoenaed. (Dkt. #25 at 11–12). Those holdings are thus inapt.

**B. Erica Tate's Privilege and Privacy Objections**

While Tate may have been able to assert psychotherapist-patient privilege over some of her medical records, she waived that right by putting her medical conditions at issue here. And because the psychotherapist-patient privilege includes considerations of Tate's privacy interests, this assertion fails too.

Courts have historically taken three approaches to determine whether a litigant waived psychotherapist-patient privilege over their medical records: (1) the broad approach; (2) the middle-ground approach; and (3) the narrow approach. *See, e.g.*, *Merrill v. Waffle House*, 227 F.R.D. 467, 474–76 (S.D. Cal. 2005) (collecting cases); *Black v. Pan Am. Laby's, LLC*, No. 1:07-CV-924, 2008 WL 11333775, at *2–*3 (W.D. Tex. July 8, 2008) (same). The first two approaches—the broad and middle-ground approaches—compare plaintiff's requested relief to what some courts have described as "garden-variety" emotional-distress damages. *Black*, 2008 WL 11333775, at *2–*3 (W.D. Tex. July 8, 2008). This legal fiction appears to refer to a plaintiff's request for damages related to "emotional pain, suffering, inconvenience, and loss of enjoyment of life," as EEOC does here.

Under the broad approach, if a plaintiff requests damages for emotional distress, their mental condition is at issue and psychotherapist-patient privilege is waived. *Merrill*, 227 F.R.D. at 474. Under the middle-ground approach, "courts have permitted discovery only when the plaintiff has done more than allege 'garden variety' emotional distress." *Black*, 2008 WL 11333775, at *3. Finally, under the narrow approach, "the privilege is waived only when the plaintiff introduces

6

privileged communications in evidence either directly or by calling the particular psychotherapist as a witness." *Merrill*, 227 F.R.D. at 474 (quotations omitted).

The Court is unaware of any Fifth Circuit precedent addressing this issue. However, Fifth Circuit authority on evidentiary standards for proving emotional injury or mental anguish is instructive. The Fifth Circuit has made clear that an "award for emotional injury greater than nominal damages must be supported by evidence of the character and severity of the injury to plaintiff's emotional well-being." *Salinas v. O'Neil*, 286 F.3d 827, 830 (5th Cir. 2002); *see also Carey v. Piphus*, 435 U.S. 247, 264 n.20, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (stating that "an award of damages must be supported by competent evidence"); *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 719 (5th Cir. 1998) (noting the importance of detailed, non-conclusional statements). So what are "nominal damages"? They are a "trifling sum awarded when a legal injury is suffered *but there is no substantial loss or injury to be compensated*." *Grisham v. City of Fort Worth*, 837 F.3d 564, 570 (5th Cir. 2016) (quoting BLACK'S LAW DICTIONARY (10th ed. 2014)) (emphasis added). In sum, under Fifth Circuit precedent, when a plaintiff seeks more than "a trifling sum" because of an alleged legal injury, she must support such a claim with "evidence of the character and severity of the injury to plaintiff's emotional well-being." *Salinas*, 286 F.3d at 830.

Consistent with this precedent, the Fifth Circuit's Pattern Jury Instruction for emotional-distress damages provides as follows:

> To recover compensatory damages for mental and emotional distress, **[**Plaintiff**]** must prove that [he/she] has ***suffered a specific discernable injury with credible evidence***. Hurt feelings, anger, and frustration are part of life and are not the types of harm that could

7

> support a mental-anguish award. Evidence of mental anguish need not be corroborated by doctors, psychologists, or other witnesses, but [Plaintiff] must support [his/her] claims with ***competent evidence of the nature, extent, and duration of the harm. Damages for mental or emotional distress must be based on the evidence at trial***. They may not be based on speculation or sympathy.

Fifth Circuit Pattern Jury Instructions (Civil Cases) § 10.13 (2020) (emphases added). Nothing about this burden is generalized or "garden variety," whatever that means. Rather, a plaintiff's burden is specific, individualized, and unique. Given this burden, defendants must be able to explore, through discovery, information relevant to their defenses, which may include medical records. These principles apply here, where Ms. Tate asserts that her emotional distress was severe enough to cause a "difficulty or inability to work with men following her time working for Defendants." (Dkt. #26 at 2).[2]

---

[2] The Court finds the term "garden variety," as a descriptor for emotional injury or mental anguish, to be curious and unhelpful. It appears to have no grounding in medical or psychological terminology. So what is its legal significance, if any? That is unclear, at least to this Court. If a "garden variety" emotional injury connotes essentially no injury, then it has no legal relevance. Likewise, if "garden variety" is intended to reference a circumstance in which "a legal injury is suffered but there is no substantial loss or injury to be compensated," *Grisham*, 837 F.3d at 570, it still fails to reference a compensable damage and remains unhelpful. Similarly, if a "garden variety" emotional injury references "[h]urt feelings, anger, and frustration," it remains irrelevant in this circuit because such feelings "are part of life and are not the types of harm that could support a mental-anguish award." Fifth Circuit Pattern Jury Instructions (Civil Cases) § 10.13 (2020).

On the other hand, if "garden variety" is meant to reference an injury that would support the recovery of "compensatory damages for mental and emotional distress," then Fifth Circuit precedent requires that the plaintiff demonstrate she "suffered a specific discernable injury with credible evidence," and such a plaintiff must also "support [her] claims with competent evidence of the nature, extent, and duration of the harm." *Id.* In this context, the term "garden variety," as applied to a plaintiff's specific, discernable emotional injuries or mental anguish seems, at best, unnecessary, and at worst, counter-intuitive and confusing. In short, use of the term "garden variety," as applied to emotional injury or mental anguish, appears to add nothing helpful to the Court's waiver analysis concerning Ms. Tate's medical records.

Against this backdrop, the waiver standard associated with the broad approach conforms to Fifth Circuit precedent and the circumstances of this lawsuit. Under the applicable broad approach, because EEOC seeks damages for Tate's "emotional pain, suffering, inconvenience, and loss of enjoyment of life" and does not seek merely "a trifling sum" for such damages, Tate's medical conditions are at issue, and she has waived any psychotherapist-patient privilege over her medical records. Because this privilege encompasses her privacy interests, this claim also fails. *See Busselman v. Battelle Mem. Inst.*, 4:18-CV-5109, 2019 WL 7763824, at *2 (E.D. Wash. June 18, 2019) ("A litigant's right to privacy is already accounted for in the operation of the psychotherapist-patient privilege.").

## C. Good Cause

EEOC has failed to show good cause as to why the Court should prevent disclosure of Tate's medical records.

Courts in this circuit evaluate good cause by weighing the following factors: "(1) [the] relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (quotations omitted). The moving party bears this burden. *Id.*

None of these factors supports EEOC. First, Tate's medical conditions are at issue, so her medical records are relevant and discoverable. Second, Eastbox needs

9

these records to be able to fairly explore and develop its defense theories. *Merrill*, 227 F.R.D. at 474 ("The rationale behind [the broad approach] is based on fairness considerations.") (quotations omitted). For the third and fourth factors, the scope of the request—eight years of medical records from medical providers that *EEOC identified* as potentially having relevant information—is reasonable and aligns with what this district has found to be permissible. *Barnett*, 2020 WL 10314640, at *3 (permitting discovery of past ten years of medical records). Finally, factors five and six relate to the burden imposed by overbroad requests. But there is no such burden here: EEOC is already in possession of all the relevant documents. Therefore, the Court finds that EEOC has failed to carry its burden in showing good cause to quash Eastbox's subpoenas. As a result, EEOC must produce the requested medical records in its possession to Eastbox.

## IV. CONCLUSION

For the above reasons, Plaintiff EEOC's Opposed Motion to Quash and for Protective Order, (Dkt. #24), is **DENIED**.

It is further **ORDERED** that EEOC shall, under Local Rule CV-34, produce the medical records of Erica Tate within its possession to Defendants by **January 21, 2025**.

**So ORDERED and SIGNED this 7th day of January, 2025.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE